# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID FAIRCLOTH; DAN T. McKITTRICK; JACK RINDLISBACHER; GILBERT ROMERO; and NORMAN L. WALLIN on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | Case No.: |
| Plaintiffs, | ) ) | **CLASS ACTION COMPLAINT** |
| v. | ) ) ) | **AND JURY DEMAND** |
| CHAMPION LABORATORIES, INC.; UNITED COMPONENTS, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL, INC.; WIX FILTRATION CORP., LLC; CUMMINS FILTRATION INC.; DONALDSON COMPANY, INC.; BALDWIN FILTERS, INC.; ROBERT BOSCH L.L.C.; MANN + HUMMEL USA, INC.; and ARVINMERITOR, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ```
FILED: AUGUST 25, 2008
08CV4844
JUDGE ZAGEL
MAGISTRATE JUDGE KEYS
YM
``` |
| Defendants. | ) | |

Plaintiffs, David Faircloth, Dan McKittrick, Jack Rindlisbacher, Gilbert Romero and Norman Wallin, on behalf of themselves and all others similarly situated, upon knowledge with respect to their own acts and upon information and belief, formed after an inquiry reasonable under the circumstances, with respect to all other matters, allege as follows:

## PRELIMINARY STATEMENT

1.      This action involves a conspiracy among Defendants and their co-conspirators with the purpose and effect of fixing prices and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of replacement motor vehicle

oil, air, fuel, transmission, and similar filters ("Filters") sold indirectly to Plaintiffs and other indirect purchasers throughout the United States.

2.      Filters are utilized to remove contaminants from combustion engines and related systems.  Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders or a vehicle's passenger compartment; and transmission filters ensure the proper functioning of an engine's hydraulic and transmission systems.

3.      Filters become less effective over time as contaminants are filtered out of or away from the respective systems, and they are designed to be replaced periodically.  This case involves a conspiracy which has affected the markets for replacement filters.  Replacement filters are purchased to replace original equipment filters included in new motor vehicles.

4.      On information and belief, a former employee of two of the Defendants named herein provided a sworn affidavit executed on March 25, 2008, in separate litigation in the Southern District of Illinois entitled *Champion Laboratories, Inc. v. Burch,* 06-CV-4031-JPG-PMF (S.D. Ill.).  That affidavit sets forth some of the facts regarding Defendants' price-fixing conspiracy.

5.      A number of the allegations contained herein, particularly those with respect to the specifics of certain meetings between the Defendants, are based on alleged recorded conversations with and personal knowledge of this former employee, who served as a National Accounts and Division Sales manager for Champion Laboratories, Inc.

6.      Upon information and belief, this former employee who was employed at Purolator Filters N.A., L.L.C. prior to 1999 and at Champion Laboratories, Inc. from 1999 to

2006 has testified that some or all Defendants conspired and agreed to coordinate prices, rig bids, and allocate customers from at least January 1, 1999 to the present.

7.    As a Division Sales Manager at Champion Laboratories, Inc. responsible for monitoring and coordinating terms of sales, the former employee was privy to, among other things, exchanges of confidential pricing materials by which Defendants unlawfully agreed to the timing and magnitude of price increases throughout the Class Period.

8.    Because of Defendants' wrongful conduct, Plaintiffs and Class members paid artificially inflated prices for Filters, thereby suffering antitrust injury to their business and property. Defendants' actions constitute *per se* violations of Section 1 of the Sherman Act.

9.    Plaintiffs bring this action seeking federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and to recover damages and for injunctive relief under state antitrust, unfair trade, consumer protection, and/or deceptive trade practices laws, and common law principles of restitution, disgorgement, and unjust enrichment, as well as to recover the costs of suit, including reasonable attorneys fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and/or stabilize the prices of Filters.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) and Title 28 United States Code Sections 1331 and 1337. This Court has subject matter jurisdiction over the state-law claims asserted in this action under Title 28, United States Code Sections 1332(d) and 1367, in that the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and Class members include citizens of states different from Defendants.

11.     Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22 and 28 U.S.C. § 1391, because during the Class period one or more of the Defendants were found and/or transacted business in this District and/or the events alleged herein arose at least in part in this District.

12.     Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the individual states listed herein.  Defendants' products are sold in the flow of interstate commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

13.     The activities of the Defendants and their co-conspirators, as described herein, substantially affected commerce throughout the United States and in each of the states identified herein because Defendants, directly or through their agents, engaged in activities affecting each such state.  Defendants have purposefully availed themselves of the laws of each of the states identified herein in connection with their activities relating to the production, marketing, and/or sale of Filters.  Defendants produced, promoted, sold, marketed, and/or distributed Filters, thereby purposefully profiting from access to indirect-purchaser consumers in each such state.  Defendants also contracted to supply or obtain goods or revenue related to the business for Filters.  As a result of the activities described herein, Defendants:

    a.    Caused damage to the residents of the states identified herein;

    b.    Caused damage in each of the states identified herein by acts or omissions committed outside each such state by regularly doing or soliciting business in each such state;

    c.    Engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of Filters (and services relating to such marketing); and

    d.    Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in

other persistent courses of conduct in each such state, and/or deriving substantial revenue from the marketing of Filters in each such state.

14.    The conspiracy described herein affected adversely every person nationwide and in each of the states identified in this Complaint who indirectly purchased Defendants' Filters. Defendants' conspiracy has resulted in an adverse monetary effect on indirect-purchasers in each state identified herein.

15.    Prices of Filters in each state can be manipulated by conspirators within that state, outside of it, or both.  Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished.  Defendants knew that commerce in each of the states identified herein would be adversely affected by implementing their conspiracy.

## PARTIES

**A.    Plaintiffs**

16.    Plaintiff David Faircloth is a resident of Las Vegas, Nevada.  Mr. Faircloth purchased Filters indirectly from one or more of the Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

17.    Plaintiff Dan T. McKittrick is a resident of Cedar City, Utah.  Mr. McKittrick purchased Filters indirectly from one or more of the Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

18.    Plaintiff Jack Rindlisbacher is a resident of Deweyville, Utah.  Mr. Rindlisbacher purchased Filters indirectly from one or more of the Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

19.    Plaintiff Gilbert Romero is a resident of Santa Fe, New Mexico. Mr. Romero purchased Filters indirectly from one or more of the Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

20.    Plaintiff Norman L. Wallin is a resident of Reno, Nevada. Mr. Wallin purchased Filters indirectly from one or more of the Defendants during the Class Period, and was damaged as a result of Defendants' unlawful conduct.

**B.    Defendants**

21.    Defendant Champion Laboratories, Inc. is a Delaware corporation which has its headquarters in Albion, Illinois, with its business address at 200 South Fourth St., Albion, Illinois 62806. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States. Champion Laboratories, Inc. is a wholly-owned subsidiary of Defendant United Components, Incorporated. United Components, Inc. and Champion Laboratories, Inc. are collectively referred to herein as "Champion."

22.    Defendant United Components, Inc. is a Delaware corporation which has its headquarters in Evansville, Indiana, with its business address at 14601 Highway 41 N., Evansville, Indiana 47725. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

23.    Defendant Purolator Filters N.A. L.L.C. ("Purolator Filters") is a Delaware company headquartered in Fayetteville, North Carolina, with a principal mailing address of 2800 South 25th Avenue, Broadview, Illinois 60565 listed with the North Carolina Secretary of State. Purolator Filters is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

24.    Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation headquartered in Morristown, New Jersey, with its business address at 101 Columbia Road, Morristown, New Jersey 07962. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

25.    Defendant Wix Filtration Corp. LLC ("Wix") is a Delaware company headquartered in Gastonia, North Carolina, with a principal mailing address of 1 Wix Way, Gastonia, North Carolina 28054.  During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

26.    Defendant Cummins Filtration, Inc. ("Cummins") is an Indiana corporation headquartered in Nashville, Tennessee, with its business address at 2931 Elm Hill Pike, Nashville, Tennessee 37214.  During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

27.    Defendant Donaldson Company, Inc. ("Donaldson") is a Delaware corporation headquartered in Minneapolis, Minnesota, with its business address at 1400 West 94th Street, Minneapolis, Minnesota 55431. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

28.    Defendant Baldwin Filters, Inc. ("Baldwin") is a Delaware corporation headquartered in Kearney, Nebraska, with a business address of 4400 E. Hwy. 30, Kearney, Nebraska 68848. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

29.    Defendant Robert Bosch, L.L.C. ("Bosch") is a Delaware company headquartered in Broadview, Illinois, with its business address at 2800 South 25th Ave., Broadview, Illinois

60155.  During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

30.     Defendant Mann + Hummel U.S.A., Inc. ("Mann + Hummel") is a Michigan corporation headquartered in Portage, Michigan, with its business address at 6400 South Sprinkle Road, Portage, Michigan 49002. During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

31.     Defendant ArvinMeritor, Inc. ("ArvinMeritor") is a Michigan corporation headquartered in Troy, Michigan, with its business address at 2135 West Maple Road, Troy, Michigan 48084.  During the Class Period, said Defendant manufactured, marketed, sold and/or distributed Filters to customers throughout the United States.

32.     Defendant ArvinMeritor owned Purolator Filters from January 1999 through March 2006, at which point it sold Purolator Filters to Bosch and Mann + Hummel, which have since operated Purolator as a joint venture.  Purolator Filters, Bosch, Mann + Hummel and ArvinMeritor are hereinafter collectively referred to as "Purolator Filters."

33.     Champion, Purolator Filters, Honeywell, Wix, Cummins, Donaldson, and Baldwin are collectively referred to hereinafter as "Defendants."

**C.     Co-Conspirators**

34.     Various persons and entities, whose identities are at this time unknown to Plaintiffs, participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof.   When Plaintiffs learn the identities of such co-conspirators, Plaintiffs may seek leave to amend this complaint to add such co-conspirators as Defendants.

35.    The acts alleged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered, or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each Defendant's business or affairs.

36.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## FACTS

A.    **Nature Of The Filters Industry**

37.    Oil, air, fuel and transmission filters are primarily sold into two separate channels: (a) to Original Equipment Manufacturers ("OEMs") and (b) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

38.    OEMs purchase filters for use in new vehicles.  These filters are installed in vehicles during the production process.

39.    Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (a) in connection with professional services provided by an indirect purchaser to other indirect purchasers (for example, an oil filter sold to a customer as part of an oil change) or (b) for individuals to replace their own Filters.

40.    Defendants are the primary manufacturers of Filters purchased by both Aftermarket Sellers and indirect purchasers.

41.    The United States Filters markets are highly concentrated, with a small number of major producers manufacturing and selling these products.  This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy.  For example, in April 2006, ArvinMentor sold Purolator Filters to Bosch and Mann

+ Hummel.  Bosch and Mann + Hummel now operate Purolator Filters as a joint venture.  Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

42.    Annual revenues for Filters markets in the United States is approximately $3 - $5 billion.

**B.    Defendants' Illegal Conduct**

43.    Beginning at least as early as January 1, 1999, and continuing thereafter, Defendants and their co-conspirators participated in a continuing contract, combination and conspiracy to artificially fix, raise, maintain and/or stabilize prices for Filters in the United States.  Defendants acted in furtherance of their scheme by, among other things: (a) having their officers and/or representatives meet at industry trade shows and other locations to set prices; and (b) exchanging confidential information regarding pricing.

44.    As a result of their unlawful actions, Defendants were able to force coordinated price increases on the Filters markets.

45.    Defendants' unlawful conduct took many forms, including, but not limited to:

    a.    Attending meetings and/or otherwise exchanging information regarding the pricing and sale of Filters;

    b.    Selling Filters to customers at collusive and non-competitive prices;

    c.    Agreeing to sell Filters at specified, pre-arranged prices;

    d.    Agreeing not to compete for each other's customers;

    e.    Accepting payment of non-competitive prices;

    f.    Giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and

    g.    Fraudulently concealing the wrongful conduct.

46.     Specific allegations of Defendants' unlawful conduct include, but are not limited to, the following:

        a.     At a trade convention called the Heritage Show in May 1999, representatives of Defendants agreed in person, on behalf of their respective employers, to raise prices for Filters, and Defendants later raised prices in accordance with the wrongful agreements reached at the Heritage Show;

        b.     Thereafter, on June 28, 1999, a Purolator Filters executive faxed a letter to an executive of Honeywell which announced a 6% increase on all Purolator branded filters effective August 15, 1999, but did not send a price increase notification to Purolator Filters' customers until July 1999;

        c.     In February 2004, Champion's President informed his sales team that Champion was about to raise prices and told them to make sure Champion's "competitors" were aware of the increase and adjusted their prices accordingly, both in timing and amount, pursuant to wrongful agreements previously reached, which the employees accomplished by meeting with representatives of some or all Defendants;

        d.     In 2004, an internal Champion e-mail with the subject line "Price Increases" confirmed that other Defendants were "on board" with the agreement regarding a coordinated price increase; and

        e.     Pursuant to the unlawful agreement, Defendants each instituted similar price increases, in amounts of approximately 4-6%, at approximately the same time.

47.     Upon information and belief, Defendants engaged in repeated meetings to further their anticompetitive scheme.

48.     On January 19, 2006, William G. Burch, former employee of both Purolator Filters and Champion filed a complaint in state court in Tulsa, Oklahoma, alleging, among other things, that Mr. Burch was wrongfully terminated from his employment with Champion for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in this Complaint.  Mr. Burch's action was removed to federal court and then transferred to Illinois for consolidation with a subsequently filed action, *Champion Labs., Inc. v. Burch,* 06-CV-1031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

49.    On March 25, 2008, Burch, a former National Accounts and Division Sales Manager for Champion, executed an affidavit under oath in connection with the *Champion Labs* case.    On information and belief, this affidavit, which he made on the basis of personal knowledge, states in part as follows:

a.    Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing.    For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public.    Champion was also given advance information about price increases by its competitors.    Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."; and

b.    Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion.    I refused to conduct those discussions."

50.    Defendants' wrongful conduct in manipulating prices was undertaken in order to charge artificially inflated prices for their Filters.

## C.    The Pass-Through Of Overcharges To End-Users

51.    Retailers and distributors of Filters are subject to vigorous price competition.    Filters are commodity products, with functionally equivalent products available from each of the Defendants, which manufacture them pursuant to standard specifications and sizes.    As commodities, Filters enjoy little or no brand loyalty, such that aggressive pricing causes consumers to switch preferences to different brands.

52.    Because retailers and distributors are subject to vigorous price competition, they have thin net margins and pass on increases in costs.    In fact, retailers and distributors often use a "standard markup" method to set prices, meaning that they add a standard percentage to their own costs to determine selling prices.    This system guarantees that increases in costs to the retailer will be passed on to indirect purchasers.    Thus, changes in the prices of Filters were

passed on rapidly rather than absorbed and indirect purchaser Class members paid more for Filters than they would have in a competitive marketplace.

53.    Defendants' conspiracy to fix, raise, maintain, and/or stabilize the prices of Filters at artificial levels resulted in harm to Plaintiffs and Class members because it resulted in them paying higher prices than they would have in the absence of Defendants' conspiracy.  The entire overcharge for the Filters at issue was passed on to Plaintiffs and Class members.

## ANTICOMPETITIVE EFFECTS

54.    The aforesaid combination and conspiracy has had the following effects, among others:

   a.    price competition for Filters has been suppressed, restrained and eliminated;

   b.    the price of Filters has been fixed, raised, maintained, and/or stabilized at artificial and non-competitive levels; and

   c.    consumers of Filters were deprived of free and open competition in the Filters markets.

55.    Defendants charged Plaintiffs and Class members anticompetitive prices for Filters.  By reason of the alleged violations of the antitrust laws, Plaintiffs and Class members have sustained injury to their business or property, having paid higher prices for Filters than they would have paid in the absence of the illegal contract, combination or conspiracy and, as a result, have been injured in their business and have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

56.    The specific amounts of damages have not yet been determined because such determination will require discovery.  Commonly used and well-accepted economic models, however, can be used to measure both the extent and the amount of the supracompetitive charge

passed through the chain of distribution to indirect purchasers such as Plaintiffs and Class

members.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action as a class action under Rules 23(a), 23(b)(2) and/or

23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly

situated.  This "Nationwide Class" is defined as:

> All persons or entities who purchased Filters in the United States indirectly from
> the Defendants or any of their parents, affiliates, subsidiaries, predecessors or
> successors-in-interest at any time from the earliest legally permissible date
> provided by the applicable statutes of limitations through the present (the "Class
> Period").

> Excluded from the Class are Defendants and their officers, directors, employees,
> parents, affiliates, subsidiaries, predecessors or successors-in-interest, any judicial
> officer presiding over this action and the members of his/her immediate family
> and judicial staff, any juror assigned to this action, and all federal or state
> governmental entities.

58.     Plaintiffs also bring this action on their own behalf and as a class action pursuant

to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of

all members of the following classes (collectively, the "Indirect Purchaser State Classes"):

> a.     **ARKANSAS**: All persons and entities in Arkansas who indirectly purchased
> Filters manufactured and/or sold by one or more of the Defendants during the
> Class Period.  Specifically excluded from this Class are Defendants and their
> officers, directors, employees, parents, affiliates, subsidiaries, predecessors or
> successors in interest, any judicial officer presiding over this action and the
> members of his/her immediate family and judicial staff, any juror assigned to this
> action, and all federal or state governmental entities (the "Arkansas Indirect
> Purchaser Class").

> b.     **ARIZONA:** All persons and entities in Arizona who indirectly purchased Filters
> manufactured and/or sold by one or more of the Defendants during the Class
> Period.  Specifically excluded from this Class are Defendants and their officers,
> directors, employees, parents, affiliates, subsidiaries, predecessors or successors
> in interest, any judicial officer presiding over this action and the members of
> his/her immediate family and judicial staff, any juror assigned to this action, and
> all federal or state governmental entities (the "Arizona Indirect Purchaser Class").

c.      **CALIFORNIA:** All persons and entities in California who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "California Indirect Purchaser Class").

d.      **DISTRICT OF COLUMBIA:** All persons and entities in the District of Columbia who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or district governmental entities (the "District of Columbia Indirect Purchaser Class").

e.      **FLORIDA**: All persons and entities in Florida who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Florida Indirect Purchaser Class").

f.      **HAWAII:** All persons and entities in Hawaii who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Hawaii Indirect Purchaser Class").

g.      **IOWA:** All persons and entities in Iowa who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Iowa Indirect Purchaser Class").

h.      **KANSAS:** All persons and entities in Kansas who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of

his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Kansas Indirect Purchaser Class").

i.    **MAINE:** All persons and entities in Maine who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Maine Indirect Purchaser Class").

j.    **MASSACHUSETTS:** All persons and entities in Massachusetts who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Massachusetts Indirect Purchaser Class").

k.    **MICHIGAN:** All persons and entities in Michigan who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Michigan Indirect Purchaser Class").

l.    **MINNESOTA:** All persons and entities in Minnesota who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Minnesota Indirect Purchaser Class").

m.    **MISSISSIPPI:** All persons and entities in Mississippi who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Mississippi Indirect Purchaser Class").

n.      **NEBRASKA:** All persons and entities in Nebraska who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Nebraska Indirect Purchaser Class").

o.      **NEVADA:** All persons and entities in Nevada who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Nevada Indirect Purchaser Class").

p.      **NEW MEXICO:** All persons and entities in New Mexico who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "New Mexico Indirect Purchaser Class").

q.      **NEW YORK:** All persons and entities in New York who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "New York Indirect Purchaser Class").

r.      **NORTH CAROLINA:** All persons and entities in North Carolina who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "North Carolina Indirect Purchaser Class").

s.      **NORTH DAKOTA:** All persons and entities in North Dakota who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants

and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "North Dakota Indirect Purchaser Class").

t.    **PUERTO RICO:** All persons and entities in Puerto Rico who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Puerto Rico Indirect Purchaser Class").

u.    **SOUTH DAKOTA:** All persons and entities in South Dakota who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "South Dakota Indirect Purchaser Class").

v.    **TENNESSEE:** All persons and entities in Tennessee who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Tennessee Indirect Purchaser Class").

w.    **UTAH:** All persons and entities in Utah who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Utah Indirect Purchaser Class").

x.    **VERMONT:** All persons and entities in Vermont who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period. Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this

action, and all federal or state governmental entities (the "Vermont Indirect Purchaser Class").

y.  **WEST VIRGINIA:** All persons and entities in West Virginia who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "West Virginia Indirect Purchaser Class").

z.  **WISCONSIN:** All persons and entities in Wisconsin who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Wisconsin Indirect Purchaser Class").

aa.  **WYOMING:** All persons and entities in Wyoming who indirectly purchased Filters manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are Defendants and their officers, directors, employees, parents, affiliates, subsidiaries, predecessors or successors in interest, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and all federal or state governmental entities (the "Wyoming Indirect Purchaser Class").

59.  Due to the nature of the trade or the commerce involved, Class members are geographically dispersed throughout the United States, and joinder of all Class members would be impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, thousands of Class members and that their identities can be learned from Defendants' books and records or from other sources.

60.  Plaintiffs' claims are typical of the claims of the other Class members.  Plaintiffs and Class members purchased Filters at artificially maintained, non-competitive prices established by the actions of Defendants in connection with the restraint of trade alleged herein.

Plaintiffs and Class members have all sustained damage in that they paid inflated prices for Filters.

61.    Plaintiffs will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class action and antitrust litigation.

62.    Common questions of law and fact exist as to all Class members, which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether Defendants and their co-conspirators engaged in a contract, combination or conspiracy to fix, raise, maintain, and/or stabilize the price of Filters;

    b.    Whether Defendants' contract, combination or conspiracy as alleged in this Complaint is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

    c.    Whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the states identified below;

    d.    Whether Defendants' wrongful conduct caused injury to the business or property of Plaintiffs and Class members;

    e.    Whether the unlawful conduct of Defendants caused Plaintiffs and Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

    f.    Whether Defendants and their co-conspirators fraudulently concealed the existence of their unlawful conduct;

    g.    Whether Plaintiffs and Class members are entitled to injunctive relief;

    h.    Whether Defendants and their co-conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of Class members; and

    i.    The appropriate measure of damages suffered by Class members.

63.    These and other questions of law and fact are common to all Class members and predominate over any questions affecting only individual members, including legal and factual issues relating to liability, damages, and restitution.

64.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Class members is impracticable. The prosecution of separate actions by individual Class members would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

65.    The interest of Class members in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  The amounts at stake for Class members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against Defendants.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

66.    The claims asserted herein are also appropriate for class certification under the laws of each of the states under which claims are asserted.

## FRAUDULENT CONCEALMENT

67.    Plaintiffs and Class members had no knowledge of Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence.  Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through filings in the aforementioned litigation in the Southern District of Illinois.  As a result of Plaintiffs' lack of knowledge of the Defendants' unlawful

scheme, Plaintiffs assert the tolling of any applicable statutes of limitations affecting the rights of action by Plaintiffs and Class members.

68.    Moreover, Defendants' actions constitute a continuing violation in that Defendants' anticompetitive practices have resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injures Plaintiffs and/or other Class members.  These artificially inflated prices continue to exist in the relevant markets as Defendants have yet to cease their unlawful conduct.  Upon each and every instance that Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiffs and Class members, Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

69.    In addition to this overcharging, Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this complaint.  Such overt acts included the illegal meetings and communications regarding Filter prices described herein.

70.    Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly paid supracompetitive prices for Filters constitute part of a continuing violation and operate to toll any applicable statutes of limitation.  Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## COUNT I

### Violations of Section 1 of the Sherman Act, 15 U.S.C. § 1

71.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

72.    Defendants and the unnamed co-conspirators entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

73.    The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants in furtherance of which Defendants fixed, raised, maintained, and/or stabilized prices for Filters in the United States and allocated the markets for Filters among themselves.  Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

74.    Defendants' contract, combination, agreement, understanding or concerted action with the co-conspirators occurred in or affected interstate commerce.  Defendants' unlawful conduct was through mutual understandings, combinations or agreements by, between and among Defendants and other unnamed co-conspirators.  These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged herein.

75.    The contract, combination or conspiracy has had the following effects among others:

(a)    prices charged to Plaintiffs and Class members for Filters were fixed or stabilized at higher, artificially derived, non-competitive levels;

(b)    Plaintiffs and Class members have been deprived of the benefits of free, open and unrestricted competition in the markets for Filters; and

(c)    competition in establishing the prices paid, customers of, and territories for Filters has been unlawfully restrained, suppressed and eliminated.

76.    As a proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have suffered injury in that they have paid supracompetitive prices for Filters.

Plaintiffs and Class members will continue to be injured in their business and property by paying more for Filters purchased indirectly from the Defendants and their co-conspirators than they would pay in the absence of the contract, combination or conspiracy.

77.    Plaintiffs and Class members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT II

### Unjust Enrichment and Disgorgement of Profits

78.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

79.    As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched.  Defendants have been unjustly enriched, to the detriment of Plaintiffs and Class members by the receipt of, at a minimum, unlawfully inflated prices and illegal profits for Filters.  Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of their ill-gotten gains.  Plaintiffs and Class members seek disgorgement of all profits resulting from such overpayments.

## COUNT III

### Violations of State Antitrust Laws

80.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

81.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. § 44-104 *et seq.*

82.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code § 16720 *et seq.*

83.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. § 28-4502 *et seq.*

84.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Code, H.R.S. § 480 *et seq.*

85.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code § 553.1 *et seq.*

86.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. § 50-101 *et seq.*

87.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. tit. 10, § 1101 *et seq.*

88.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. § 445.773 *et seq.*

89.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. § 325D.52 *et seq.*

90.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1 *et seq.*

91.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. § 59-801 *et seq.*

92.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. § 598A *et seq.*

93.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. § 57-1-1 *et seq.*

94.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. § 75-1 *et seq.*

95.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code § 51-08.1-01 *et seq.*

96.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Puerto Rico Code 10 LPRA § 257 *et seq.* and 31 LPRA §5141.

97.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. Cent. Code § 37-1 *et seq.*

98.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. § 47-25-101 *et seq.*

99.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Ann. § 76-10-911 *et seq*.

100.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia § 47-18-1 *et seq.*

101.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. § 133.01 *et seq.*

102.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wyoming Stat. Ann. § 40-12-105 *et seq*.

103.    Class members in each of the states listed above paid supracompetitive, artificially inflated prices for Filters.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

104.　　As a result of Defendants' violations of the statutes set forth above, Plaintiffs and other Class members seek damages and costs of suit, including reasonable attorneys' fees.

<div align="center">

**COUNT IV**

**State Consumer Protection and Unfair Competition Laws**

</div>

105.　　Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

106.　　Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

107.　　Defendants have engaged in unfair competition or unconscionable, unfair deceptive acts or practices in violation of Arkansas Code § 4-88-101 *et seq.*

108.　　Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code § 17200 *et seq.*

109.　　Defendants have engaged in unfair competition or unconscionable, unfair deceptive acts or practices in violation of District of Columbia Code § 28-3901 *et seq.*

110.　　Defendants have engaged in unfair competition or unconscionable, unfair deceptive acts or practices in violation of Florida Stat. § 501.201 *et seq.*

111.　　Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. § 50-623 *et seq.*

112.　　Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts General Laws, Chapter 93A, § 1 *et seq.*

113.　　Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. § 59-1601 *et seq.*

114.    Defendants have engaged in unfair competition or unconscionable, unfair deceptive acts or practices in violation of New Mexico Stat. § 57-12-1 *et seq.*

115.    Defendants have engaged in unfair competition or unfair deceptive acts or practices in violation of New York Gen. Bus. Law § 349 *et seq.* (for which only actual damages and no penalties are sought).  Specifically:

a.    Defendants engaged in commerce in New York;

b.    Defendants and their co-conspirators agreed to raise prices by direct agreement for customers located in New York;

c.    New York consumers were targets of the conspiracy;

d.    The secret agreements were not known to New York consumers; and

e.    Because of Defendants' unlawful trade practices in the State of New York, Class members who indirectly purchased Filters have been injured because they paid more for Filters than they would have paid in the absence of Defendants' unlawful trade acts and practices.

116.    Defendants have engaged in unfair competition or unconscionable, unfair deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1 *et seq.*

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. tit. 9, § 2451 *et seq.*

118.    Plaintiffs and Class members in the states listed above paid supracompetitive, artificially inflated prices for Filters.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for Filters than they otherwise would have absent Defendants' unlawful conduct.

119.    As a result of Defendants' violations of the laws listed above, Plaintiffs and Class members in the states listed above are entitled to damages and other relief, including attorneys' fees, as provided for in the laws listed above.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members pray for judgment against Defendants, as follows:

a.      That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as class representatives and that Plaintiffs' counsel be appointed as counsel for the Classes;

b.      That the unlawful agreement, conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

1.      A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Cause of Action;

2.      Acts of unjust enrichment as set forth in the Second Cause of Action.

3.      An unlawful combination, trust, agreement, understanding and/or concert of action in violation of state antitrust laws identified in the Third Cause of Action; and

4.      Violations of state consumer protection and unfair competition laws identified in the Fourth Cause of Action.

c.      That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other

contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

d.      That Plaintiffs and Class members recover damages, as provided by state antitrust laws, and that a judgment be entered in favor of Plaintiffs and Class members against Defendants, jointly and severally, in an amount to be trebled in accordance with such laws.

e.      That Plaintiffs and Class members recover damages and/or all available monetary and equitable remedies under the state consumer protection and unfair competition laws identified above;

f.      That Plaintiffs and Class members obtain penalties, punitive or exemplary damages, and/or full consideration, where the laws of the respective states identified herein so permit (except as to New York Gen. Bus. Law § 349 *et seq.*, for which Plaintiffs seek only actual damages);

g.      That Plaintiffs and Class members be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

h.      That Plaintiffs and Class members be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate;

i.      That Plaintiffs and Class members recover their cost of this suit, including reasonable attorneys' fees as provided by law; and

j.      That Plaintiffs and Class members have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Respectfully submitted,

/s/John R. Wylie

John R. Wylie
FUTTERMAN HOWARD WATKINS WYLIE & ASHLEY,
CHTD.
122 S. Michigan Ave., Suite 1850
Chicago, IL 60603
312-427-3600
312-427-1850 (fax)
Email: jwylie@futtermanhoward.com

Dated: August 25, 2008

**Of Counsel:**

(Applications for admission *pro hac vice* will be filed)

Richard M. Hagstrom
James S. Reece
Michael E. Jacobs
ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
Tel:  612-339-2020
Fax:  612-336-9100
Email: rhagstrom@zelle.com
        jreece@zelle.com
        mjacobs@zelle.com

        and

Vincent J. Esades
Renae D. Steiner
HEINS MILLS & OLSON, PLC
310 Clifton Avenue
Minneapolis, MN  55403
Tel:    612-338-4605
Fax:    612-338-4692
Email: vesades@heinsmills.com
        rsteiner@heinsmills.com

**ATTORNEYS FOR PLAINTIFFS AND ALL
OTHERS SIMILARLY SITUATED**

31